IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTINE BOTELLO, | § | |
| Plaintiff, | § | 5-18-CV-00361-FB-RBF |
| vs. | § | |
| AT&T UMBRELLA BENEFIT PLAN NO. 3, | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the cross-motions for summary judgment filed by Plaintiff Christine Botello and Defendant AT&T Umbrella Benefit Plan No. 3 (the "Plan") in this denial-of-benefits case under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Dkt. Nos. 22 & 23. The District Court referred the case pursuant to Western District of Texas Local Rule CV-72 and Appendix C. *See* Dkt. No. 27. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed below, the Plan's Motion, Dkt. No. 23, should be **GRANTED**, and Botello's motion, Dkt. No. 22, should be **DENIED**. The Plan did not abuse its discretion in discontinuing Botello's long-term disability benefits as of July 1, 2015, and substantial evidence supports that decision. The District Court, however, should deny the Plan's request for attorneys' fees and costs.

### I. Factual and Procedural Background

Plaintiff Botello is a former Senior Project Manager-Network Management for an affiliate of SBC, Inc., where she earned $31.50 per hour. *See* ATT502; ATT1833. Previously Botello served as a Customer Sales Associate and then as an Area Manager-Network Management Operations. *See* ATT502; ATT1833. Botello stopped working in September 2002, alleging disability due to Major Depressive Disorder, Anxiety, Diabetes Mellitus, Carpal Tunnel Syndrome, Hyperlipidemia, Obesity, and Bipolar Disorder. *See* ATT1830; ATT205.

As of approximately May 14, 2004, Botello qualified for and received long-term disability benefits under her employer's ERISA-qualifying disability-income program. *See* ATT24-25. As a result of developments not relevant here, the AT&T Disability Income Program came to have responsibility for the administration of Botello's benefits. The long-term disability benefits plan in effect when Botello's alleged disabling condition began was the SBC Disability Income Plan, and it remains the governing plan for present purposes and provides the relevant criteria addressing eligibility for benefits. *See* Siegel Decl. ¶ 4, Dkt. No. 32. According to the governing plan, a qualifying plan-participant employee, like Botello, can receive benefits if the individual is "Totally Disabled," which means that "because of Illness or Injury, an Employee is prevented from engaging in any employment for which the Employee is qualified or may reasonably become qualified based on education, training, or experience." ATT5780. Employment which precludes an award of long-term disability benefits under the plan must pay at least 50% of the Employee's Basic Wage Rate at the time long-term disability benefits began. *Id.*

Following her initial qualification for and receipt of long-term disability benefits, Botello periodically provided updates to the benefits administrator, Sedgwick Claims Management. As

a result, she received multiple extensions of her benefits that extended them up through May 31, 2014. ATT130; ATT1450; Def. Mot. at 4; Pl. Resp. at 1.

But in September 2014, Botello returned a disability questionnaire dated September 15, 2014 that indicated she may no longer meet the governing disability criteria. *See* ATT1895-ATT1898. So Sedgwick, as the benefits administrator, requested that Botello and her providers supply updated medical information. ATT134-35; ATT1455-56.

In response, Botello's treating psychiatrist Dr. David G. Johnson completed a Mental Health Provider Statement in which he diagnosed her with Major Depression Recurrent, Severe and Anxiety. ATT1881-82. Although Dr. Johnson opined that Botello's memory and ability to concentrate were impaired, he did not provide any observed evidence of the impairment. Instead, Dr. Johnson wrote: "working with 3 grandchildren." *See id.* Dr. Johnson also did not describe Botello's day-to-day functioning, as had been requested by Sedgwick. Nor did he address whether she needed assistance to complete any activities of daily living.

After reviewing Dr. Johnson's Statement, along with Botello's September 2014 questionnaire providing her reported activities of daily living, Sedgewick referred the claim to independent physician-examiner psychiatrist Dr. Reginald A. Givens for review. *See* ATT1877-79. After reviewing Botello's medical records, Dr. Givens found "insufficient objective observable evidence to support [Botello's] cognitive impairment or impairment in activities of daily living to a degree that would impair [Botello] from performing occupational duties." ATT1877. Shortly thereafter, on November 4, 2014, Dr. Johnson and Dr. Fleishman, a representative of Dr. Givens, spoke regarding Botello's mental capacity. *See* ATT1870. During this teleconference, Dr. Johnson reported that he had seen Botello on August 20, 2013, January of 2014, May of 2014, and again on September 22, 2014. *See id.* During the last visit, Dr.

Johnson noted Botello was "very anxious and depressed, had lack of focus, poor concentration, and was feeling hopeless and helpless." *See id.* Botello "felt paralyzed and was very disorganized in her thinking and confused and had what sounded like a manic episode." *Id.* At the same time, Dr. Johnson projected that Botello should be able to return to work in a month. *See id.* Accordingly, this teleconference did not change Dr. Givens's opinion.

Sedwick thereafter referred Botello for an independent medical evaluation with psychiatrist Dr. Brian Skop. *See* ATT1845-57. After examining Botello and reviewing her previous psychiatric medical records, Dr. Skop diagnosed her with Major Depressive Disorder, recurrent moderate; Posttraumatic Stress Disorder; and Unspecified Personality Disorder. Although previous providers had diagnosed Botello with bipolar disorder, Dr. Skop found that "the manic like symptoms [Botello] has are brief in duration and do not meet the criteria for a hypomanic episode which is necessary for a diagnosis of bipolar disorder." ATT1853-54. Such "brief mood swings," Dr. Skop found, "are usually more indicative of a personality disorder." *Id.* Ultimately, Dr. Skop placed Botello's limitation "in the mild to moderate range based on affective instability, mild derailment of her thoughts and possibly some mild reduction in her grooming." ATT1856.

Dr. Skop found Botello's Global Assessment Functioning to exceed 40, which contrasted with Dr. Johnson's previous assessment. In reaching this conclusion, Dr. Skop noted that Botello "generally takes care of most activities of daily living. She socializes with some friends. She goes to church. She cares for three grandchildren, and she does some volunteer work. While this is intermittent, per her self-report, it does involve coordinating activities, interpersonal skills and some computer skills." *Id.* Although Dr. Skop did not believe Botello could return to her previous employment "as the demands of that job in conjunction with the current stressors

she is under would probably exacerbate her anxiety and mood complaints," he opined that Botello could probably perform some "limited employment" that did not have the job demands of "interpersonally demanding work or work that would necessitate long hours and travel," as those types of demands "would likely exacerbate her condition." *Id.* Dr. Skop, however, observed that Botello "did not appear to be invested [in] returning to work but more so in caring for her grandchildren." *Id.* Finally, Dr. Skop noted that "per [Botello's] self-report, her ability to maintain pace at work in a consistent manner may be impaired," although Dr. Skop recognized that this was "difficult to measure" during an examination. *Id.*

When asked to clarify what he meant by work "not demanding interpersonally," Dr. Skop explained that "the demands of supervisory work would likely aggravate [Botello's] anxiety and depression but that she could perform lower level jobs." ATT1841-2. Despite having the chronic conditions of major depressive disorder, posttraumatic stress disorder, and personality disorder, Dr. Skop observed that Botello "adequately" performed the "less demanding job of customer service representative" at a level where she was promoted. *Id.* And Dr. Skop clarified that when he opined that Botello should not work long hours, he was referring "primarily [to] the stress that extensive travel placed on [Botello] when she was traveling a lot as part of her supervisory position. This was the position she was in when she went on disability, and she described working long hours (10+ hour days) and extensive travel." *Id.* Dr. Skop noted that Botello performed adequately and at a level where she was promoted when performing a lower level job with more regular hours *i.e..* 8 hour days. *Id.* Restricting Botello's work in such a manner would, in Dr. Skop's view, account for any impairment she might have in maintaining pace. *Id.* Given her lengthy absence from work, however, Dr. Skop observed that Botello

5

"might benefit from part-time days (4 hour days) and frequent breaks (approximately a break every hour) for a few weeks (approximately 4 weeks) to readjust to the work setting." *Id.*

After reviewing Dr. Skop's report, Sedgwick determined that Botello's case should be reviewed by its Vocational Specialist to evaluate whether there were appropriate employment opportunities for Botello in her area and in light of the restrictions provided by Dr. Skop. *See* ATT1475. Although Sedwick believed the evaluation would likely reveal appropriate employment opportunities for Botello, it decided to re-evaluate Botello's claim once those opportunities were identified, given the possibility that Botello might seek and obtain additional treatment with a current or new provider. *See id.*

On May 29, 2015, Job Accommodation Specialist Courtney Janchenko MA, CRC performed a Transferrable Skills Assessment in which she assessed Botello's work-related abilities. ATT1823-26. Taking into account the restrictions imposed by Dr. Skop—no supervisory responsibility, no travel, and no work over 8 hours—along with Botello's education and skills acquired from her prior work, Janchenko identified the following sedentary alternative occupations Botello could perform: (1) Credit Analyst, Dictionary of Occupational Titles ("DOT") #160.267-022 with a median wage of $25.74; (2) Personnel Clerk, DOT #209.362-026 with a median wage of $18.07; (3) Audit Clerk, DOT #210.382-010 with a median wage of $17.20; and (4) Service Clerk, DOT #221.367-070 with a median wage of $17.41. *See id.* All of these positions were at least 50% of Botello's Basic Wage Rate at the time her alleged disability began. *See id.*

Following this assessment, Sedgwick determined that Botello's long-term disability benefits should be discontinued. *See* ATT162; ATT1482. On July 9, 2015, Sedgwick advised Botello via letter of her claim denial, effective July 1, 2015. The letter detailed the reasons for

the denial decision and advised Botello of her rights to appeal. *See* ATT1808-15. Specifically, Sedgwick noted that based on all documentation available there is no observable clinical evidence substantiating Botello's claims that she is limited in her day-to-day functioning as a consequence of a psychiatric condition. *See id*. In addition, Sedgwick noted that Botello's reported activities of daily living, including volunteer work, supported its decision. *See id.* Finally, Sedgwick noted that the Social Security Administration's determination that Botello was disabled did not affect its decision. *See id.* While Sedgwick took this determination into account, the Social Security Administration applies a different definition of disability than does the governing plan and, unlike the plan, is required to provide special deference to a treating physician's opinion. *See id.*

Botello appealed, explaining that she has been unable to find a psychiatrist to conduct an evaluation. *See* ATT1803-04. In her appeal, Botello claimed to have the following "level of functionality": "can not [sic] focus, concentrate, handle [her] own finances, racing thoughts, don't care to shower-3-5-7 days! . . . unable to keep up with daily functions such as check and go through mail and sort pay bills . . . Depressed-sleep-lay in bed, racing thoughts, cry."[1] Botello's appeal was forwarded to AT&T's Integrated Disability Service Center Quality Review Unit, which is also administered by Sedgwick. *See* ATT1802.

On July 18, 2015, Botello admitted herself to the Laurel Ridge Treatment Center, with the goal of securing a "specific proper diagnosis [and] medication regulation." ATT1608. While at Laurel Ridge, Botello presented with "worsening" of her chronic polar disorder, including depression and suicidal thoughts. *See* ATT1569. But Botello also appeared to be "medically

---

[1] Botello had previously expressed difficulty in finding a treating provider. *See, e.g.*, ATT1468-69, 1474. Each time Sedgwick provided advice regarding how to go about finding a provider who was covered by her insurance. *See id.*

7

stable" with normal functioning, concentration, and intact memory. *See* ATT1584, ATT1607, ATT1069, ATT1674. Botello was discharged on July 24, 2015. *See* ATT1569. On discharge, Botello's mental status was clear with euthymia and intact thought process and no suicidal ideation. *See id.*

On September 15, 2015, independent reviewing psychiatrist Dr. Michael A. Rater reviewed Botello's claim file as part of the appeals process. *See* ATT1546-53. After reviewing Botello's medical record and speaking with several of her treating providers, Dr. Rater concluded that Botello was not disabled from July 1, 2015 through the present, with the exception of July 18 through 24, 2015 when she was admitted to Laurel Ridge. *See id.* In reaching this conclusion Dr. Rater reasoned that Botello's treating providers stated that they "either do not have consistent enough follow up with her to make a determination of her work capacity or they state that she does have a work capacity though she would require some accommodations or attention to job fit as she does not have good interpersonal skills and would be better suited to a job that did not require significant teamwork or interpersonal interactions as a primary basis for the job function." *Id.* Dr. Rater later supplemented his report to explain that the Social Security Administration's determination that Botello was disabled did not impact her ability to function. ATT1543. According to Dr. Rater, Botello's receipt of long-term disability benefits since 2004, "indicates a chronic condition." *Id.* But while Botello had hospitalizations, she "did stabilize to require only outpatient treatment of relatively low intensity for ten years." *Id.* Accordingly, Dr. Rater determined that Botello's "history supports that she has a long time condition that can go into periods of extended remission or partial remission that allows her to have a functional capacity." *Id.* A few days later, Dr. Rater reviewed Dr. Skop's clarification of his initial assessment and Ms. Janchenko's May 2015 Transferrable Skills Assessment. *See id.*

This additional information, according to Dr. Rater, supported his opinion that Botello was not disabled except during the period of Botello's July 2015 hospitalization at Laurel Ridge. *See id.*

Also on appeal, internist Dr. Jose A. Perez Jr. reviewed Botello's claim file to determine if she had any physical impairments that would limit her functioning. *See* ATT1554-58. After reviewing Botello's medical records and speaking with one of her treating providers, Dr. Perez concluded that there was "no evidence that [Botello] is disabled from any job. . . from 7/1/15 to present." *Id.*

Given Dr. Rater and Dr. Perez's conclusions, as well as all of the evidence in the claim file including the Transferrable Skills Assessment, Sedgwick determined that Botello did not meet the Plan's eligibility criteria for long-term disability benefits. *See* ATT1504. Accordingly, on October 2, 2015, Sedgwick informed Botello that the denial of her long-term disability benefit claim had been upheld. *See* ATT1530-33.

After exhausting the Plan's internal appeals process, Botello brought this ERISA action for unpaid benefits on June 22, 2018. *See* Dkt. No. 1. Both sides now move for summary judgment on the issue of liability. *See* Dkt. Nos. 22 & 23.

## II. Legal Standards

*Denial of Benefits*. A participant or beneficiary of a benefits plan such as Botello may bring a civil action in a district court "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where, as here, a plan gives the plan administrator "discretionary authority to determine the eligibility for benefits or to construe the terms of the plan," "a court will reverse an administrator's decision only for abuse of discretion." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir.

9

1999). Although courts usually apply a two-step analysis to such discretionary benefit plans to both determine whether the administrator's decision was legally sound and review for an abuse of discretion, the first step can be skipped if the decision was not an abuse of discretion. *See High v. E-Systems Inc.*, 459 F.3d 573, 577 (5th Cir. 2006). Both parties here focus on whether the Plan abused its discretion when it denied Botello long-term disability benefits. Accordingly, the Court will skip step one of the analysis and analyze only whether the Plan abused its discretion.

"In applying the abuse of discretion standard, [courts] analyze whether the plan administrator acted arbitrarily or capriciously." *Meditrust*, 168 F.3d at 214 (quotations omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quotations omitted). Accordingly, a court cannot substitute its judgment for the judgment of the administrator, but must give substantial deference to the administrator's decision. *See Jordan v. Cameron Iron Works*, 900 F.2d 53, 55 (5th Cir. 1990). In contrast, no deference is afforded to an administrator's "unsupported suspicions." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010).

"The abuse of discretion standard sets a relatively high bar for the plaintiff to overcome." *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 577-78 (E.D. La. 2003). But "in cases where the plan administrator is a 'self-interested insurer' who serves as both the insurer and the administrator of the plan and stands to gain from a denial of the claim, the Fifth Circuit applies a 'sliding scale' that relaxes the abuse of discretion standard." *Id.* It is this sliding scale that Botello urges the Court to apply here. But here the Plan has delegated claims administration to third-party Sedgwick. *See* ATT4906; ATT6067. The Plan also

asserts—and Botello does not dispute—that Sedgwick has no financial interest in the outcome of a claim. *See* Def. Resp. at 2. Accordingly, there is no reason to apply a sliding scale here. *E.g.*, *Cooper v. Hewlett-Packard* Co., 592 F.3d 645, 652 n. 2 (5th Cir. 2009); *see also Heron v. ExxonMobil Disability Plan*, No. CV H-16-862, 2017 WL 3215165, at *6 (S.D. Tex. Jul. 28, 2017) ("An ERISA plaintiff asserting a conflict of interest must come forward with evidence of the existence and extent of the conflict.").

"In addition to not being arbitrary and capricious, the plan administrator's decision to deny benefits must be supported by substantial evidence." *Cytec Indus.*, 619 F.3d at 512. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Ultimately, this court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Id.* (quotations and brackets omitted).

*Summary Judgment Standard*. "Standard summary judgment rules control in ERISA cases." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). Summary judgment is appropriate only if the evidence on file shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). In ERISA cases, however, the district court is generally constrained to reviewing the evidence before the plan administrator when assessing factual questions. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006); *Cytec Indus*, 619 F.3d at 515.[2] A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty*

---

[2] An authenticated bates-labeled copy of the administrative record may be found at Dkt. Nos. 31 & 33.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Where, as is here, the parties file cross-motions for summary judgment, the basic Rule 56 standard remains unaltered—"the Court must determine whether either of the parties deserves judgment on the facts that are not disputed." *Hollis v. Lubrizol Corp. Long Term Disability Plan*, No. 4:06-CV-3691, 2008 WL 7950030, at *2 (S.D. Tex. Feb. 14, 2008). Because no genuine issue of material fact exists regarding whether Sedgwick's decision to deny Botello benefits was arbitrary or capricious, and the decision is supported by substantial evidence, the Plan prevails

here. *See Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004).

### III. Analysis

*The Plan's Denial of Benefits Was Not an Abuse of Discretion and Substantial Evidence Supports Its Decision.* According to the opinions of independent medical consultants Givens, Skop, and Rater, there was insufficient evidence to suggest that Botello was significantly limited in her day-to-day functioning as a consequence of her psychiatric condition. At most, Dr. Skop determined that Botello was only mild to moderately psychologically limited and could perform work that was not interpersonally demanding or that would necessitate long hours and travel. *See* ATT1856. Sedgwick then provided the only work-related restrictions on file to a vocational specialist to determine whether there were appropriate employment opportunities for Botello in her area with a median wage that would permit Botello to earn at least 50% of her income at the time her alleged disability began, as required under the Plan's terms. *See* ATT1823-26. The basis for the Plan's denial was enumerated in its initial denial letter and then again in its letter addressing Botello's appeal. *See* ATT1808-15; ATT1530-33. There is nothing arbitrary or capricious in this decision.

Before denying Botello benefits, the Plan's claim administrator reviewed the administrative record on multiple occasions and relied on the opinions of three independent Board Certified Psychiatrists, all of whom reviewed the relevant medical records and one of whom examined Botello. *See Meditrust*, 168 F.3d at 215 (denial of benefits was not arbitrary and capricious where the reviews were made "by a number of qualified physicians and based on all the hospital records."); *see also Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602 (5th Cir. 1994) (finding no abuse of discretion where the Plan consulted two physicians to determine whether claimant's medical records supported the claimed limitations). The opinions

of Givens, Skop, and Rater—"each of whom are specialists and qualified experts in fields specifically related to [Botello's] symptoms"—"constitute substantial evidence supporting the Plan's [] determination." *Cytec Indus*, 619 F.3d at 515.

Although Botello's treating provider Dr. Johnson initially suggested that Botello was more cognitively disabled than Doctors Givens, Skop, or Rader believed, Dr. Johnson did not provide any objective evidence for this opinion, notwithstanding Sedgwick's reasonable request for it.[3] Regardless, Botello "cannot show there was an abuse of discretion just because [her] physician might disagree with the conclusion of those professionals conducting the reviews on Sedgwick's behalf." *Keaton v. Sedgwick Claims Mgmt. Servs., Inc.*, No. SA-17-CV-223-XR, 2018 WL 2027747, at *7 (W.D. Tex. Apr. 30, 2018).[4] In other words, "ERISA does not require the opinions of treating physicians to be preferred over those of other physicians reviewing a file; ERISA merely requires that the opinions of treating physicians, as with all evidence submitted by the claimant, actually be taken in account in an administrator's determination." *Love v. Dell, Inc.*, 551 F.3d 333, 337 (5th Cir. 2008); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). This is what occurred here. The Plan's decision in any event was not inconsistent with Dr. Johnson's opinion; Dr. Johnson believed Botello should be able to return to work by December 2014. *See* ATT1870.

---

[3] *See id.* at 514 ("A plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes.").

[4] *See also Hysick v. Reliance Standard Life Ins. Co. of Texas*, No. A-04-CA-176 LY, 2006 WL 8431990, at *15 (W.D. Tex. Dec. 18, 2006), *report and recommendation adopted sub nom.*, 2007 WL 9700714 (W.D. Tex. Jan. 18, 2007) ("It is, however, abundantly clear that an ERISA plan administrator's decision is not arbitrary or capricious because it came down to a permissible choice between the claimant's physicians and independent reviewing physicians.").

For all these reasons, there is a rational connection between the Plan's decision to discontinue Botello's long-term disability benefits and the evidence of record, and substantial evidence supports this decision.

Botello's argument based on the Transferrable Skills Assessment that only considered Dr. Skop's assessed limitations—as opposed to the "actual symptoms of [Botello's] mental illness"—misunderstands the role a vocational expert. Pl. Mot. at 10-11; Pl. Resp. at 7. It is a *physician's* responsibility to evaluate a claimant's symptoms and provide opinions on limitations and restrictions from a medical standpoint. Then, if requested by the plan administrator, a vocational expert will take those limitations and determine if there is any occupation in the area that the claimant could perform. The Plan properly followed this procedure here.

Botello cites to no case or other authority—nor is the Court aware of any—that would require a vocational expert to evaluate a claimant's non-functional related symptoms when performing a transferrable skills assessment. *Cf. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008) (explaining that procedural unreasonableness may result where an administrator "fail[s] to provide its independent vocational and medical experts with all of the relevant evidence."). To the contrary, it likely would be error for a nonmedical professional to assess a claimant's work-related restrictions when performing a vocational assessment. And, notably, Botello does not identify any additional functional limitations that the Plan should have instructed its vocational expert to consider on this record. Pursuant to the Plan, it is Botello's obligation to provide the "[o]bjective medical information" sufficient to establish she is disabled. *See* ATT6090.

For all these reasons, Botello's point of error lacks merit. *See Cytec Indus.*, 619 F.3d at 512-513 (explaining that a Section 1132(a)(1)(B) claimant bears "the initial burden of demonstrating that the denial of benefits under an ERISA plan was arbitrary and capricious") (quotations and brackets admitted).

*Attorneys' Fees and Costs Should Not be Awarded*. At the beginning and conclusion of its Motion for Summary Judgment, the Plan summarily requests that the Court award attorneys' fees and expenses associated with this litigation, pursuant to ERISA § 1132(g). Under the facts and circumstances of this case, the Plan's request for attorneys' fees and costs should be denied.

Pursuant to 29 U.S.C. § 1132(g)(1), "a court in its discretion may award fees and costs to either party, as long as the fee claimant has achieved some degree of success on the merits." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 734 (5th Cir. 2018) (quotations and ellipsis omitted). Assuming the District Court accepts this Report and Recommendation, the Plan would be eligible for a fee award under ERISA. This does not, however, end the inquiry.

Even where a party is eligible for fees under ERISA, a Court should examine the facts of the case to determine if a fee award is appropriate. *See Victory Med. Ctr. Houston, Ltd. P'ship v. CareFirst of Maryland, Inc.*, 707 F. App'x 808, 809-10 (5th Cir. 2018). In making such a determination, a district court may consider the following discretionary factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties'

positions." *Id.* (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Bowen*, 624 F.2d at 1266.

None of these factors weighs in the Plan's favor. The Plan, moreover, didn't brief them. And significantly, there is no evidence that Botello acted in bad faith here. *See Demand v. UNUM Life Ins. Co. of Am.*, No. 3:07-CV-1785-B, 2009 WL 10677869, at *1. The District Court should exercise its discretion to deny the Plan its requested attorneys' fees and costs on this record. *See Bellaire Gen Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832–33 (5th Cir. 1996) ("attorneys' fees award under ERISA are purely discretionary").

## IV.     Conclusion and Recommendation

For the reasons discussed above, it is recommended that the Plan's Motion, Dkt. No. 23, should be **GRANTED**, and Botello's motion, Dkt. No. 22, should be **DENIED**. The Plan's request for attorneys' fees and costs, however, however, should not be permitted on this record.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 27th day of June, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE